IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
NORTHERN DIVISION

UNITED STATES OF AMERICA, STATE OF
ILLINOIS ex rel. MICHAEL THORNTON,

                            Plaintiff,

v.

PFIZER INC and HOSPIRA, INC.,

                            Defendants.

Case No. 1:16-CV-07142

Judge Hon. John Robert Blakey

---

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS RELATOR'S AMENDED COMPLAINT**

---

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ................................................................................................................... 4

I.     RELATOR DOES NOT STATE A FALSE CLAIMS ACT VIOLATION ............ 4

      A.    Relator's New Legal Theory Cannot Correct the Fatal Deficiencies in His Complaint ................................................................................. 4

      B.    The Purported FDA Reporting Allegations Do Not Amount to A False Claim Under An Implied Certification Theory ................................ 6

      C.    Relator's Allegations Of Defective Devices Do Not Establish A "Worthless Services" Theory of FCA Liability ............................... 9

           1.    *Relator does not demonstrate that any pumps were "worthless"* ......... 9

           2.    *Relator fails to allege any false claims for "worthless" pumps were presented to the government* ............................................... 10

II.    RELATOR FAILS TO STATE A CLAIM FOR RETALIATION UNDER THE FCA ................................................................................................. 11

III.   RELATOR FAILS TO ALLEGE A VIOLATION OF THE IWA ....................... 13

IV.   RELATOR'S AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY ................................................................................... 14

      A.    Relator's Claims Should Be Dismissed With Prejudice ............................... 14

      B.    Should Relator's State Law Claims Survive Dismissal, The Court Should Decline to Exercise Supplemental Jurisdiction ........................... 15

CONCLUSION ............................................................................................................. 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*,
    499 F.3d 663 (7th Cir. 2007) ................................................................. 14

*Baycol Prod. Litig., In re*
    732 F.3d 869 (8th Cir. 2013) ................................................................. 2

*Brandon v. Anesthesia & Pain Mgmt.*,
    277 F.3d 936 (7th Cir. 2002) ................................................................. 12

*Car Carriers, Inc. v. Ford Motor Co.*,
    745 F.2d 1101 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1985) ............................ 4

*Corah v. Bruss Co.*,
    77 N.E.3d 1038 (Ill. App. Ct. 2017) ........................................................ 13

*D'Agostino v. ev3, Inc.*,
    845 F.3d 1 (1st Cir. 2016) ............................................................ 5, 8, 10, 11

*Groce v. Eli Lilly & Co.*,
    193 F.3d 496 (7th Cir. 1999) ................................................................ 15

*Mitsui Sumitomo Ins. Co. v. Moore Transp., Inc.*,
    500 F. Supp. 2d 942 (N.D. Ill. 2007) ........................................................ 2

*Pirelli Armstrong Tire Corp., v. Walgreen Co.*,
    No. 09 C 2046, 2010 WL 624709 (N.D. Ill. Feb. 18, 2010),
    *aff'd*, 631 F.3d 436 (7th Cir. 2011) ......................................................... 14

*Sardiga v. N. Tr. Co.*,
    948 N.E.2d 652 (Ill. App. Ct. 2011) ........................................................ 13

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*,
    No. 13 C 5865, 2017 WL 5904656 (N.D. Ill. Feb. 6, 2017),
    *aff'd*, 873 F.3d 574 (7th Cir. 2017) ........................................................ 15

*United States v. Sanford-Brown, Ltd.*,
    840 F.3d 445 (7th Cir. 2016) ................................................................ 7, 8

*U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*,
    764 F.3d 699 (7th Cir. 2014) ................................................................ 9

*U.S. ex rel. Booker v. Pfizer Inc*,
    847 F.3d 52 (1st Cir. 2017) ........................................................................ 10

*U.S. ex rel. Campie v. Gilead Sci., Inc.*,
    862 F.3d 890 (9th Cir. 2017), *petition for cert pending*, No. 17-936
    (docketed Jan. 3, 2018) .........................................................................12, 13

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
    290 F.3d 1301 (11th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003) ......................... 10

*U.S. ex rel. Higgins v. Boston Scientific Corp.*,
    No. 11-cv-2453, 2017 WL 3732099 (D. Minn. Aug. 29, 2017) .................................. 5

*U.S. ex rel. Nargol v. DePuy Orthopaedics, Inc.*,
    865 F.3d 29 (1st Cir. 2017), *cert. denied*, 138 S. Ct. 1551 (2018) .........................5, 10

*U.S. ex rel. Piacentile v. Snap Diagnostics, LLC*,
    No. 14-cv-3988, 2018 WL 2689270 (N.D. Ill. June 5, 2018) ...............................7, 8

*U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
    836 F.3d 770 (7th Cir. 2016) ..................................................................... 10

*U.S. ex rel. Roop v. Hypoguard USA, Inc.*,
    559 F.3d 818 (8th Cir. 2009) ...................................................................... 7

*U.S. ex rel. Rostholder v. Omnicare, Inc.*,
    745 F.3d 694 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 85 (2014) ..........................7, 12

*U.S. ex rel. Swift v. DeliverCareRx, Inc.*,
    No. 14 C 7976, 2015 WL 10521636 (N.D. Ill. Oct. 26, 2015) .................................. 1

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ...................................................................... 2

*U.S. ex rel. Ziebell v. Fox Valley Workforce Dev. Bd., Inc.*,
    806 F.3d 946 (7th Cir. 2015) ..................................................................... 12

*U.S. ex rel. Zverev v. USA Vein Clinics of Chi., LLC*,
    244 F. Supp. 3d 737 (N.D. Ill. 2017) .......................................................... 10

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
    136 S. Ct. 1989 (2016). .........................................................................6, 8

*Yabsley v. Conover*,
    644 F. Supp. 689 (N.D. Ill. 1986) ................................................................ 4

*Young v. Alden Gardens of Waterford, LLC*,
    30 N.E.3d 631 (Ill. App. Ct. 2015) ........................................................... 14

**Statutes**

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360e(b)(1)(B)(ii) ................................. 3

28 U.S.C. § 1367(c)(3) ............................................................................. 15

**Rule**

Fed. R. Civ. P. 9(b) .............................................................................. 1, 5, 6, 10

**Other Authorities**

John Robert Blakey, J., *Case Procedures, Motions to Dismiss*,
    https://www.ilnd.uscourts.gov/judge-info.aspx?RxIItJ+3ldN99GnKt+Q4wg==
    (last visited Sept. 17, 2018) ................................................................. 14

CMS, U.S. Dep't of Health & Human Svcs., *Medicare Coverage Issues Manual*:
    *Infusion Pumps* (Sept. 26, 2001), https://www.cms.gov/Regulations-and-
    Guidance/Guidance/Transmittals/downloads/R143CIM.pdf ................................ 11

CMS, U.S. Dep't of Health & Human Svcs., *MLN Matters: Number SE1609: Medicare
    Policy Clarified for Prolonged Drug and Biological Infusions Started Incident to a
    Physician's Service Using an External Pump* (2015), https://www.cms.gov/Outreach-
    and-Education/Medicare-Learning-Network-MLN/MLNMattersArticles/Downloads/
    SE1609.pdf ................................................................................. 11

FDA Releasable 510(k) Database, *Applicant Name: "Hospira,"*
    https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm
    (last visited Sept. 17, 2018) ................................................................. 6

Q Core Medical, Ltd, *510(k) Summary, Sapphire Infusion Pump System with
    Administration Sets* (Oct. 17, 2013),
    https://www.accessdata.fda.gov/cdrh_docs/pdf12/K123049.pdf............................ 3

## PRELIMINARY STATEMENT

Relator fails to adequately allege the elements of a False Claims Act ("FCA") violation or to plead a viable retaliation claim. Defendants' memorandum in support of the pending motion to dismiss ("Defendants' Motion") explains, in detail, why the Amended Complaint is deficient. (ECF No. 42.) The Amended Complaint attempts to assert that reimbursement claims for Sapphire pumps were *impliedly* false because (1) Defendants purportedly violated FDA's medical device reporting regulations (ECF No. 35, ¶¶ 49, 65, 76), and (2) supposed quality defects in certain Sapphire pumps rendered them ineligible for government reimbursement (*id.* ¶¶ 108, 116.). In other words, the Amended Complaint seeks to advance "implied false certification" and "worthless services" theories of FCA liability. It fails on both scores.

First, the Amended Complaint fails to establish that Hospira's alleged noncompliance with FDA reporting regulations was "material to the Government's payment decision," as required under the Supreme Court's *Escobar* decision. (*Id.* at 7-9.) Second, the Amended Complaint fails to plead with particularity that the government paid for any Sapphire device that was "truly worthless," as required under the Seventh Circuit's *Absher* decision and the First Circuit's *D'Agostino* decision. (*Id.* at 9-11.) Relator likewise makes conclusory assertions as to the other essential elements of an FCA claim, including presentment and scienter, particularly as measured against Federal Rule of Civil Procedure 9(b)'s well-established, heightened pleading standard. (*Id.* at 10-12.)

Relator's opposition makes no substantive response to address these deficiencies, nor does his opposition suggest they could be cured through yet *another* amendment. Relator's failure to answer Defendants' arguments concerning implied certification and worthless services is tantamount to waiver and is reason alone to dismiss his FCA claims. *See U.S. ex rel. Swift v. DeliverCareRx, Inc.*, No. 14 C 7976, 2015 WL 10521636, at *2 (N.D. Ill. Oct. 26, 2015)

(Blakey, J.) (holding failure to respond to arguments constituted waiver and granting motion to dismiss, in part, as unopposed); *see also Mitsui Sumitomo Ins. Co. v. Moore Transp., Inc.*, 500 F. Supp. 2d 942, 950-51 (N.D. Ill. 2007) ("The law of the Seventh Circuit is clear: 'Perfunctory or undeveloped arguments are waived.'" (citation omitted)) (collecting cases).

Perhaps because he now recognizes his implied certification and worthless services theories of liability are fatally flawed, Relator advances a new theory of FCA liability in his opposition brief. Under the labels of express false certification and "fraudulent inducement,"[1] Relator asserts that "Defendants misled the Government about the relationship between Hospira and Q Core to obtain FDA approval" of the Sapphire pumps. (ECF No. 48, at 7.) On the basis of that naked assertion, Relator theorizes that, if FDA clearance for the Sapphire pumps was procured through false statements or fraud, then all subsequent reimbursement claims for the Sapphire device were "false." (*See*, *e.g.*, *id.* at 5.)

Whatever label Relator uses to describe that legal theory, he did not plead it in his Amended Complaint. In any event, the Amended Complaint does not include a single allegation—let alone any *particularized* allegations—that Q Core's 510(k) application for clearance of the Sapphire pump made any misrepresentations about the entities involved in the manufacture of the devices. The Amended Complaint does not even allege Defendants were involved in the submission.[2] And Relator's Amended Complaint fails to plausibly allege that

---

[1] Under a fraudulent inducement theory, FCA liability may attach to claims under a government contract that was originally obtained by fraud or false statements. *See In re Baycol Prod. Litig.*, 732 F.3d 869, 877-78 (8th Cir. 2013); *see also U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 378 (4th Cir. 2008).

[2] Public FDA records reflect that Q Core, which is not party to this action, sought and obtained FDA clearance of the Sapphire pump under Section 510(k) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360e(b)(1)(B)(ii). *See* Q Core Medical, Ltd, *510(k) Summary,*

2

any supposed "misrepresentations" about Defendants' role in the pumps' manufacture was material to FDA clearance or to Defendants' ability to import the device into the U.S. market.

Finally, as described in Defendants' Motion, Relator's retaliation-based claims are also inadequately pleaded. With respect to his FCA retaliation claim, Relator does not allege he was engaged in protected activity within the meaning of the FCA or that Defendants were on notice of that activity. (ECF No. 42, at 12-13.) Relator's Illinois Whistleblower Act ("IWA") claim is also deficient. Relator claims he was reassigned after he refused to prepare and sign papers authorizing the return of defective microbore sets to the manufacturer. (*Id.* at 14.) But Relator fails to identify any law, rule, or regulation that he would have violated by signing documents, which is a required element of his IWA claim. Relator's opposition does not answer those shortcomings.

For all of these reasons, and as described in more detail below, the Court should dismiss the Amended Complaint in its entirety with prejudice.

---

*Sapphire Infusion Pump System with Administration Sets* (Oct. 17, 2013), https://www.accessdata.fda.gov/cdrh_docs/pdf12/K123049.pdf.

## ARGUMENT

### I.   RELATOR DOES NOT STATE A FALSE CLAIMS ACT VIOLATION.

#### A.   Relator's New Legal Theory Cannot Correct the Fatal Deficiencies in His Complaint.

Relator's opposition attempts to add a new theory of FCA liability. His opposition contends that Defendants made unspecified misrepresentations to FDA about Defendants' role in developing or manufacturing the Sapphire pumps, supposedly to induce FDA to approve (Q Core's application for) the Sapphire device. (ECF No. 48, at 5.) Relator further claims that Defendants made these misrepresentations to "avoid the import ban" then in effect, which affected only Hospira's Costa Rica manufacturing site. (*See* ECF No. 35, ¶ 19.) Relator's opposition confusingly characterizes these and other allegations under the umbrella of "fraudulent inducement,"[3] and asserts an "express false certification" theory of falsity tied to the same allegations.

As a threshold matter, in ruling on a motion to dismiss, "the court cannot consider the legal sufficiency of statements not contained in the complaint, nor can the plaintiffs amend their complaint through statements made in briefs and affidavits in opposition to a motion to dismiss." *Yabsley v. Conover*, 644 F. Supp. 689, 700 (N.D. Ill. 1986); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1985). Relator failed to allege his new theory in the Amended Complaint. The Court therefore should decline to

---

[3] Relator invokes "fraudulent inducement" to refer to his newly asserted claim that Defendants made misrepresentations in the FDA clearance process. But Relator's opposition also uses the term "fraudulent inducement" incorrectly to encompass third-party submission of claims for defective products or other regulatory violations, thereby conflating the distinct legal doctrines of fraudulent inducement, implied certification, and worthless services. (ECF No. 48, at 5-7.)

consider Relator's new theory that Defendants violated the FCA by procuring FDA clearance of the Sapphire pumps through fraud.[4]

Even if the Court were willing to countenance Relator's sudden change of course, he does not establish a false claim even under his new legal theory. Relator's vague and unsupported contentions about misrepresentations in the FDA clearance process do not provide any of the requisite detail demanded by Rule 9(b); the "who, what, when, where, and how" of any alleged misrepresentation to FDA are glaringly absent. The district court in *United States ex rel. Higgins v. Boston Scientific Corp.*, which Relator's opposition cites for support (ECF No. 48, at 6), dismissed a similar complaint on precisely that basis. No. 11-cv-2453, 2017 WL 3732099, at *9 (D. Minn. Aug. 29, 2017) (finding relator failed to satisfy Rule 9(b) because he did "not plead with particularity the acts taken or statements made to allegedly defraud the FDA") (emphasis omitted).

Moreover, Relator fails to plausibly allege materiality in connection with the new theory. As the First Circuit in *D'Agostino* explained, in rejecting similar arguments, a "fraudulent inducement" claim fails unless Relator plausibly alleges FDA would not have approved the device absent the supposed false statements. *D'Agostino v. ev3, Inc.,* 845 F.3d 1, 7 (1st Cir. 2016). The *Nargol* case, on which Relator relies, also held that where the FDA took no regulatory action after the alleged misrepresentations were disclosed, the complaint failed to plead a viable fraudulent inducement claim. *See U.S. ex rel. Nargol v. DePuy Orthopaedics,*

---

[4] For these same reasons, Relator's contention that Defendants waived any argument with respect to a fraudulent inducement theory of liability by not challenging it in their Motion is misplaced. Because Relator's fraudulent inducement theory was advanced for the first time in his opposition brief, Defendants could not have waived any challenge to the sufficiency of those allegations by failing to anticipate them in their Motion.

*Inc.*, 865 F.3d 29, 41 (1st Cir. 2017), *cert. denied,* 138 S. Ct. 1551 (2018). Relator does not plausibly allege FDA's decision to grant Q Core's 510(k) application for the Sapphire pumps would have been influenced in any way by whether Defendants had a role in manufacturing the devices, nor has FDA taken any regulatory action in response to Relator's allegations, which he disclosed to the government over two years ago.

Finally, Relator's suggestion that Defendants concealed their alleged role in manufacture of the Sapphire pump to avoid an import ban on devices manufactured at a Hospira facility in Costa Rica is both inadequately pleaded under Rule 9(b) and implausible. The Amended Complaint provides no grounds to believe the FDA import ban on devices from Hospira's Costa Rica facility would affect FDA's clearance of devices manufactured by Defendants elsewhere, including at Q Core's facilities. (*See* ECF No. 35, ¶¶ 18, 19; ECF No. 48, at 6.) In fact, it is a matter of public record that Hospira continued to receive FDA 510(k) clearance for other medical device products during the pendency of FDA's Costa Rica import ban, as well as after it was lifted.[5] The import ban allegations cannot support Relator's newly asserted theory of FCA liability.

### B. The Purported FDA Reporting Allegations Do Not Amount to A False Claim Under An Implied Certification Theory.

Relator's opposition fails to explain how Defendants alleged violations of the FDA's recall reporting requirements provide a predicate for FCA liability. As explained in Defendants' Motion, to be actionable, "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement" must satisfy the FCA's "demanding" materiality requirement. *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016). Under that

---

[5]  *See* FDA Releasable 510(k) Database, *Applicant Name: "Hospira,"* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm (last visited Sept. 17, 2018).

standard, it is "not enough" to allege that "supposed noncompliance and misrepresentations would have entitled the government to decline payment"; rather, the relator must demonstrate that the "government's decision to pay [defendant] would likely or actually have been different had it known of [defendant's] alleged noncompliance." *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016); *see also U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 825 (8th Cir. 2009) ("The conclusory allegation that unidentified government agents 'would not have reimbursed through Medicare individuals submitting claims [for the device] if [they] had known of the defects and failure to comply with the rules and regulations of the FDA' does not comply with Rule 9(b)." (second set of brackets in original; citation omitted)).

The Amended Complaint's allegations about purported regulatory violations fail to meet the FCA's demanding materiality standard. The Amended Complaint states only the vague and conclusory allegation that the government "made payments for claims that otherwise would not have been allowed." (ECF No. 35, ¶¶ 106, 114.) Relator's opposition adds little more. Rather, the opposition merely asserts, without support or citation, that "misrepresentations were conditions of participation for Defendants to sell the Sapphire pump and are inextricably tied to eligibility to receive payment from the Government for the non-compliant and defective devices." (ECF No. 48, at 11.) Those bare allegations are inadequate to establish materiality, particularly considering "the Medicare and Medicaid statutes . . . do not require compliance with . . . FDA safety regulations as a precondition to reimbursement."[6] *U.S. ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 701 (4th Cir. 2014), *cert. denied,* 135 S. Ct. 85 (2014).

---

[6] Because the reporting regulations have no bearing on the government's decision to reimburse for Sapphire pumps, this case is not analogous to *United States ex rel. Piacentile v. Snap Diagnostics, LLC,* No. 14-cv-3988, 2018 WL 2689270 (N.D. Ill. June 5, 2018), where the defendants were alleged to have submitted bills to the government for unnecessary sleep testing.

Absent a substantive response, Relator incorrectly asserts that issues of "materiality are matters of proof . . . not legal grounds to dismiss." (ECF No. 48, at 12) The Supreme Court expressly rejected that contention in *Escobar* and held the pleading standard for materiality is "rigorous" and "demanding," and not "too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss or at summary judgment." 136 S. Ct. at 2003-04 & n.6; *see also Sanford-Brown*, 840 F.3d at 447-48 (finding, as a matter of law, that relator had failed to demonstrate defendants' alleged regulatory violations were material to the government payment decision).

Here, Relator does not allege in the Amended Complaint or argue in his opposition that FDA has taken any action to remove Sapphire pumps from the market, or that the Centers for Medicare and Medicaid Services ("CMS") suspended Medicare reimbursement for the pumps in the two years since he filed his original *qui tam* complaint. The FDA's and CMS's failure to take adverse action, combined with the government's election not to intervene in Relator's FCA complaint, dooms Relator's theory that the alleged recall reporting violations were material to Medicare's decision to reimburse the Sapphire devices. *Cf. D'Agostino*, 845 F.3d at 8 (dismissing relator's non-intervened *qui tam* complaint because the "FDA has apparently demanded neither recall nor relabeling" of the defendant's allegedly defective medical device).[7]

---

The district court found in that case that the complaint pleaded materiality because, as a regulatory matter, reimbursement was only available for "medically necessary" tests and the government would not have paid for the extra testing had it been disclosed. *See id.* at *4.

[7] The "criminal subpoena" issued by the Department of Justice and referenced in Relator's opposition brief (ECF No. 48, at 12) does nothing to alter the materiality analysis. In Relator's own words, the subpoena relates to "manufacturing, production, testing, quality and validation" of the Sapphire device, not whether Medicare or Medicaid received false or fraudulent claims for the product in violation of the FCA. The mere existence of an investigation sheds no light on

C. **Relator's Allegations Of Defective Devices Do Not Establish A "Worthless Services" Theory of FCA Liability.**

Relator similarly fails to explain how his allegations about defects in the Sapphire pumps establish a false claim under a "worthless services" theory.

1. *Relator does not demonstrate that any pumps were "worthless."*

As explained in Defendants' Motion, the Amended Complaint fails to plausibly allege how the malfunction of certain pumps' power cords or software rendered them "worthless." (ECF No. 42, at 9-10, *citing U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 709-10 (7th Cir. 2014).) Relator's allegations at most claim certain Sapphire pumps *eventually* malfunctioned after an unspecified period of operation, but not that any pumps were entirely worthless at the time of purchase, nor even that they were worthless after a malfunction occurred. Medical device malfunctions are relatively common, and there are processes in place for servicing devices and responding to malfunctions, which make clear that the devices in question are not worthless. Relator's opposition does not address those deficiencies except to assert "Defendants concealed the myriad device defects that rendered the Sapphire pumps worthless to patients and customers." (ECF No. 48, at 8) Those conclusory statements are no response to the flaws in his worthless services theory.[8]

---

whether FDA's recall reporting regulations are material to Government reimbursement of Sapphire pumps.

[8] Relator also cites a recent settlement announced *United States ex rel. Wu v. Alere San Diego*, No. GLR-11-CV-1808, relating to purportedly defective devices. (ECF No. 48, at 3 n.1.) A manufacturer's decision to settle a *qui tam* action is not legal precedent or even persuasive authority.

2. *Relator fails to allege any false claims for "worthless" pumps were presented to the government.*

Relator's Amended Complaint also fails to plead presentment of any false claim for "worthless" pumps by stating with particularity "'the who, what, when, where, and how' of an actual false claim alleged to have been filed because of the defendant's actions." *U.S. ex rel. Booker v. Pfizer, Inc*, 847 F.3d 52, 57-58 (1st Cir. 2017) (citation omitted). Although the Amended Complaint alleges the Sapphire devices "are used by hospitals, medical clinics, and home healthcare patients to deliver the proper dosage of medications," (ECF No. 35, ¶¶ 28, 50), *no* allegations identify a particular false claim to the government for the Sapphire device submitted by Defendants or another third party. *See U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002), *cert. denied,* 537 U.S. 1105 (2003); *see also D'Agostino*, 845 F.3d at 12. *Cf. U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016).

Relator tries to water down his pleading obligations with respect to the presentment element, but the authorities he cites do not assist him. (ECF No. 48, at 9.) In *United States ex rel. Zverev v. USA Vein Clinics of Chicago, LLC*, for example, the court found the allegations sufficient to withstand dismissal only because the complaint alleged facts showing claims billed on specific days were fraudulent and that Medicare and Medicaid were billed for a substantial portion of the procedures on those days. 244 F. Supp. 3d 737, 745 (N.D. Ill. 2017).

Likewise, in *Nargol*, the First Circuit found the relator had met his burden under Rule 9(b) where the pleadings established that it was "*statistically certain* that [the defendant] caused third parties to submit many false claims to the government" because the defects allegedly compromised "every sale" of that device. 865 F.3d at 40-41 (emphasis added); *see also Presser*, 836 F.3d at 778 (finding allegations of presentment were adequate where "the alleged facts

*necessarily* led one to the conclusion that the defendant had presented claims to the Government" (emphasis added)).

By contrast, Relator has failed to establish reliable indicia that any false claims for worthless pumps were submitted to the government, much less with the level of certainty in *Nargol*. For example, while Relator identifies some individual customer complaints related to power cord or software malfunctions (ECF No. 35, ¶¶ 36, 61), he does not specify whether those claims rendered the products unusable, whether the products were sold to the government, or whether the complaints involved a claim for government reimbursement. *See, e.g., D'Agostino*, 845 F.3d at 11 ("[T]he assumption that physicians submitted claims for reimbursement merely because many of their patients in general were insured under government programs is faulty."). In fact, although infusion pumps may be reimbursable in the home health setting under Medicare Part B, CMS explicitly advises that infusion pumps used incident to physician's services are "not separately billable as durable medical equipment under Medicare."[9] Relator accordingly has failed to plead presentment.

This Court should therefore dismiss Counts I and II of the Amended Complaint.

## II. RELATOR FAILS TO STATE A CLAIM FOR RETALIATION UNDER THE FCA.

Relator's reassignment after raising internal complaints regarding alleged quality and regulatory issues does not establish an FCA retaliation claim. In opposing dismissal, Relator

---

[9] *Compare* CMS, U.S. Dep't of Health & Human Svcs., *Medicare Coverage Issues Manual*: *Infusion Pumps* § 60-14 (Sept. 26, 2001), https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R143CIM.pdf, *with* CMS, U.S. Dep't of Health & Human Svcs, *MLN Matters: Number SE1609: Medicare Policy Clarified for Prolonged Drug and Biological Infusions Started Incident to a Physician's Service Using an External Pump* (2015), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNMattersArticles/Downloads/SE1609.pdf.

argues he had an objectively reasonable and good faith belief that Defendants were committing fraud against the government (ECF No. 48, at 18), but this conclusory assertion misses the mark. As revealed in both the Amended Complaint and Relator's opposition brief, Relator expressed concerns about only purported quality issues and potential regulatory violations, not FCA-protected activity. As the court in *Rostholder* explained, complaints about regulatory violations do not support liability under the FCA's whistleblower protections. 745 F.3d at 702; *see also U.S. ex rel. Ziebell v. Fox Valley Workforce Dev. Bd., Inc.*, 806 F.3d 946, 953 (7th Cir. 2015) (finding FCA retaliation claim was "woefully lacking in factual support" where the alleged internal complaints related to regulatory compliance, not the presentment of fraudulent claims in violation of FCA).

The Amended Complaint further fails to allege Relator placed Defendants on notice of FCA-protected activity. Relator does not allege he notified his superiors of anything other than potential regulatory violations. He makes no allegation that he took (or even contemplated) action toward a *qui tam* complaint before his reassignment. (ECF No. 35, ¶¶ 80-91.) In *Brandon v. Anesthesia & Pain Management*, 277 F.3d 936 (2002), the Seventh Circuit found a lack of notice under similar circumstances. In *Brandon,* the court found that an employee's reports of possible regulatory non-compliance to his supervisor "would not necessarily put [the defendants] on notice that he was planning to take a far more aggressive step and bring a *qui tam* action against them or report their conduct to the government." *Id.* at 945. The same is true here, particularly since Relator's alleged quality-related complaints fell squarely within his role as a Quality Assurance employee.

Contrary to Relator's argument, moreover, *United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890 (9th Cir. 2017), *petition for cert pending*, No. 17-936 (docketed Jan.

3, 2018), does not support his contention that Defendants were on notice of any FCA-protected activity. In *Campie* the relator threatened to inform FDA of the allegedly fraudulent conduct and was asked to sign a severance agreement stating that he would not pursue an FCA action. *See id.* at 908. Relator makes no similar allegation here.

Relator's opposition attempts to add new allegations not contained in the Amended Complaint including the claim that he "also raised questions about Defendants' fraudulent conduct with regard to billing for devices that did not work and orchestrating multiple illegal silent recalls." (ECF No. 48, at 19.) The Court should disregard that allegation, which is conclusory, and not pleaded in the Amended Complaint in any event. Accordingly, Relator's FCA retaliation claim should be dismissed.[10]

## III. RELATOR FAILS TO ALLEGE A VIOLATION OF THE IWA.

Relator fails to plead a viable IWA claim. Section 20 of the IWA applies only if the plaintiff asserts he refused to participate in an activity that violates a state or federal law, rule, or regulation; and that his employer retaliated against him because of that refusal. *See Sardiga v. N. Tr. Co.*, 948 N.E.2d 652, 656-57 (Ill. App. Ct. 2011); *Corah v. Bruss Co.*, 77 N.E.3d 1038, 1043 (Ill. App. Ct. 2017). Relator's IWA claim relies on his alleged refusal to prepare and sign documents authorizing the return of microbore sets from Defendants to Q Core. But Relator points to nothing unlawful about the Defendants' return of products to Q Core. Rather, the only regulatory violation asserted is Defendants' alleged failure to subsequently report these actions to FDA. Critically, Relator does not allege that he had any role in the FDA reporting decision. *See*

---

[10] Although Defendants' arguments focus on the first two elements of Relator's FCA retaliation claim, Defendants have not waived their arguments with respect to the third element—that Defendants did not discriminate against Relator because of protected activity. Because Relator does not allege he was engaged in protected activity or that Defendants had the requisite notice, the Court need not assess the fact-bound third element to conclude that dismissal is warranted.

*Corah*, 77 N.E.3d at 1043 (observing that, to assert a claim under the IWA, the "*plaintiff* must actually refuse to participate in an activity that would violate a law or regulation") (emphasis added; citation and internal quotation marks omitted).

The lone case cited by Relator, *Young v. Alden Gardens of Waterford, LLC*, 30 N.E.3d 631 (Ill. App. Ct. 2015), is plainly distinguishable. In *Young*, the court found an IWA violation where the plaintiff alleged she was constructively discharged after refusing to falsify medication administration records for nursing home patients. *Id.* at 637 (holding falsification of patient medical records violates the Illinois Nurse Practice Act). By contrast, Relator does not allege any false information was contained in the paperwork he allegedly refused to prepare or sign, nor does he identify a statute or regulation violated by the return of products to Q Core. Relator accordingly has failed to allege conduct within the purview of Section 20 of the IWA, and his claim must be dismissed.

## IV. RELATOR'S AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY.

### A. Relator's Claims Should Be Dismissed With Prejudice.

The repeated pleading deficiencies with respect to each of Relator's claims warrant dismissal of the Amended Complaint in its entirety and with prejudice. A court may properly deny leave to amend where a plaintiff has failed to cure pleading deficiencies through prior amendment. *See Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007); *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *1 (N.D. Ill. Feb. 18, 2010), *aff'd*, 631 F.3d 436 (7th Cir. 2011). Additionally, Relator does not identify any "extraordinary circumstances" warranting a third opportunity to state his claims, the Court may dismiss the case without further opportunity for amendment pursuant to the

Court's Procedures for Motions to Dismiss.[11]  Relator has had ample opportunity to plead his case, but failed to do so, and further leave to amend would be futile.  Accordingly, dismissal with prejudice is warranted.

### B.    Should Relator's State Law Claims Survive Dismissal, The Court Should Decline to Exercise Supplemental Jurisdiction

Although Defendants maintain that all Relator's claims should be dismissed, if the Court finds Relator's state-law retaliation claim survives, the Court should decline to exercise supplemental jurisdiction and dismiss the claim.  *See* 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (noting that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed"); *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, No. 13 C 5865, 2017 WL 5904656, at *2 (N.D. Ill. Feb. 6, 2017), , *aff'd,* 873 F.3d 574 (7th Cir. 2017) (declining to exercise supplemental jurisdiction over state law claims following dismissal of federal causes of action).

### CONCLUSION

For the reasons detailed above and in Defendants' Motion, Defendants respectfully request the Court dismiss Relator's Amended Complaint with prejudice.  In the event Relator's state law claims survive dismissal, Defendants request the Court decline to exercise supplemental jurisdiction over those causes of action, and dismiss the Amended Complaint in its entirety.

Dated: September 17, 2018

---

[11]  *See* John Robert Blakey, J., *Case Procedures, Motions to Dismiss*, https://www.ilnd.uscourts.gov/judge-info.aspx?RxIItJ+3ldN99GnKt+Q4wg== (last visited Sept. 17, 2018).

By: /s/ Andrew J. Hoffman II

Andrew J. Hoffman II (*pro hac vice*)
DLA Piper LLP (US)
2000 Avenue of the Stars
North Tower, Suite 400
Los Angeles, California
Telephone: 310.595.3010
Facsimile: 310.595.3310

Ilana H. Eisenstein (*pro hac vice*)
DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania
Telephone:  215.656.3351
Facsimile: 215.606.3351

John Hamill
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois
Telephone:  312.368.7036
Facsimile: 312.251.5809

*Attorneys for Defendants Pfizer and Hospira*